FILED '10 NOV 01 10:55 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDI RAE OHLDE

               Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

               Defendant.

09-3104-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

      Plaintiff Brandi Rae Ohlde brings this action for judicial review of a final decision of the

Commissioner of Social Security denying her application for supplemental security income (SSI)

payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C.

§§ 405(g), 1383(c)(3). The Commissioner's decision is affirmed.

## BACKGROUND

Ohlde was twenty-three years old at the time of the administrative hearing. Admin. R. 354. She earned a graduate equivalency degree (GED). *Id.* Ohlde has a limited, sporadic work history. *Id.* at 18, 80-85. She alleges disability due to lupus, depression, and hypothyroidism. Ohlde filed for disability on September, 9, 2005 alleging disability from July 24, 2003. Her application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on April September 6, 2007 with a supplemental hearing on March 13, 2008. The ALJ issued an opinion on March 27, 2008 finding Ohlde not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. §416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity (SGA) since the alleged onset of disability. 20 C.F.R. §416.920(b). If the claimant has engaged in SGA, he is not disabled. *Id.* If the claimant has not engaged in SGA, the analysis proceeds. The Commissioner determines at step two whether the claimant has a severe impairment. An impairment is severe if it significantly limits the claimant's

2 - OPINION AND ORDER

ability to perform basic work activities. 20 C.F.R. §416.921. The burden to show a medically determinable severe impairment is on the claimant. *Bowen*, 482 U.S. at 146.        At step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141; 20 C.F.R. §416.920(d). The criteria for these listed impairments are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1. (Listing of Impairments).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §416.945, Social Security Ruling (SSR) 96-8p. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §416.920(f).

If the claimant cannot perform his past relevant work, the analysis proceeds to step five. At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen*, 482 U.S. at 142; 20 C.F.R. §416.920(g). Here the burden of production shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. *Id.,* 20 C.F.R. §416.966.

## ALJ'S FINDINGS

The ALJ applied the five step disability determination analysis and found at step one that Ohlde had not engaged in any SGA since September 9, 2005, the protected filing date for her SSI application. Admin. R. 15. At step two, he determined that Ohlde has the medically severe impairments of discoid lupus, obesity, mild generalized anxiety disorder, and situational depression. *Id.* The ALJ found at step three that Ohlde does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1. *Id.*

The ALJ found Ohlde has the RFC to perform light work except she is "limited to simple, repetitive tasks due to no past relevant work history and reports of anxiety." *Id.* at 16. At step four, the ALJ found Ohlde had no past relevant work. *Id.* at 19. The ALJ solicited the testimony of a vocational expert (VE). The VE testified there were other jobs in the national economy an individual of Ohlde's age, education, and RFC could perform. *Id.* at 19-20, 402-406. Based on the VE's testimony the ALJ found there were significant jobs in the national economy that Ohlde could perform and was therefore not disabled. *Id.* at 20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for "determining credibility, resolving conflicts in the medical testimony and resolving ambiguities." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193.

## DISCUSSION

Ohlde alleges the ALJ erred at step two of the disability analysis by discounting the severity of her mental impairments. She further alleges the ALJ erred at step three by failing to determine her lupus met a listing. Ohlde also asserts the ALJ erred at step five by not considering all of her limitations.

### I.    Medical Background

Dr. Wenner of Peak Performance examined Ohlde on July 8, 2002 for some left knee instability and pain while working and standing four hours a day. Admin. R. 136. He noted she had no injury, no gait deviations, and normal range of motion in the knee. Dr. Wenner further noted she was obese and deconditioned. He recommended strengthening, cardiovascular exercise, and patient education. On December 4, 2002 Dr. Balme examined Ohlde for knee pain and noted a normal exam, no swelling, normal x-rays, and ordered an MRI. *Id.* at 141. The MRI was essentially normal. *Id.* 140. Dr. Balme wrote a letter to Dr. Zoolkoski, a family practice physician, on January 22, 2003 noting that Ohlde continued to have knee pain and he though it was intermittent subluxation of her patella. *Id.* at 138-139. However, he noted it was possible

that the knee pain was related to the rash on Ohlde's face and that she had a positive ANA titer, so lupus was a possibility. Dr. Balme noted she needed some follow up.

Blood testing done on October 10, 2003 was suggestive of lupus or another connective tissue disease and more testing was recommended. *Id.* 233. Ohlde was seen at Klamath Family Practice Center on January 19, 2004 for fatigue and mood changes. *Id.* at 212. She was given a prescription for Zoloft. Testing done on February 13, 2004 noted a medium titer ANA test, with high titers suggestive of systemic lupus erythematosus (SLE) and with lower titers also indicative of other connective tissue diseases. *Id.* at 225-230. Further testing was recommended.

A physician at Klamath Family Practice Center examined Ohlde on March 17, 2004 for follow up on gastritis. *Id.* at 207. He assessed discoid lupus and recommended a strong sun block, a trial of Chloroquine and further blood tests. Blood tests were negative for Anti-DNA, a test for lupus and other connective tissue diseases. *Id.* at 218-219. Ohlde was examined at Touro University Medical Center (Touro) on September 20, 2004 and it was noted she had hypothyroidism, acne, mild lupus, and situational depression following the deaths of her sister and grandmother. *Id.* at 178. Further tests were ordered. The tests were positive for ANA but were negative for lupus anticoagulant. *Id.* at 184-185. Ohlde continued treatment at Touro through November 24, 2004 and was noted to have hypothyroidism, connective tissue disease, depression, malar rash lupus and further evaluation was recommended. *Id.* at 174. A CT of Ohlde's cervical spine was negative with some mild changes at C6. *Id.* at 180.

On August 29, 2005 Ohlde went to Klamth Open Door Family Practice to establish care and get a well woman exam. *Id.* at 205. Although she reported having lupus, vascular disease and connective disease, it was noted she had no acute complaints, and lab tests were ordered. The

6 - OPINION AND ORDER

Lab tests were negative for lupus. *Id.* at 222-224. Dr. Rey, a physician at Klamath Open Door Family Practice, examined Ohlde on January 30, 2006 for further medications and noted complaints of pain and depression since the loss of her sister. *Id.* at 272-273. He ordered tests and gave her a referral for a mental health evaluation.

Dr. Rey noted on February 14, 2006 that Ohlde was improving on Lexapro and had a normal exam. *Id.* at 270-271. He diagnosed hypothyroidism treated with Synthroid, depression treated with Lexapro, and discoid lupus treated with Plaquenil. Ohlde returned on July 11, 2006 because of dizzy spells and pain in her left chest. *Id.* at 304-305. Her exam was normal and she was given information on smoking cessation. Dr. Rey examined Ohlde on September 12, 2006 to follow up on her thyroid issues and noted a normal exam, angry mood, and he continued her medications. *Id.* at 303. Ohlde went to Dr. Rey on January 9, 2007 for complaints following a biopsy of her rash. *Id.* at 301-302. Dr. Rey referred her to rheumatology to follow up on her original diagnosis of SLE.

Cheryle Palmer, a nurse practitioner (NP), evaluated Ohlde on February 1, 2007 and noted she had an episode of depression four years ago following the deaths of her sister and grandmother. *Id.* at 298-300. She noted Ohlde goes out on weekends and enjoys bowling and being with her fiancé. Ohlde complained of daily mood swings and trouble sleeping. NP Palmer diagnosed generalized anxiety disorder, rule/out bipolar affective disorder NOS, rule/out ADD, rule out borderline personality disorder. She noted daily life stressors and gave her a Global Assessment of Functioning (GAF) of 40.[1] NP Palmer prescribed Geodon. NP Palmer saw Ohlde

---

[1]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 31 to 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school,

on February 13, 2007 for medication management and noted a depressed mood, but otherwise

appropriate exam. *Id.* at 297. She recommended a trial of Geodon, counseling, and classes.

Dr. Tackey, a rheumatologist, examined Ohlde on March 9, 2007 and noted a normal

exam except for a malar rash. *Id.* at 335-336. He noted a skin biopsy of the rash was said to be

consistent with discoid lupus. Dr. Tackey diagnosed discoid lupus and noted that some patients

progress to SLE or other autoimmune diseases and recommended tests and Methotrexate. Dr.

Tackey examined Ohlde on April 11, 2007 and noted she complained of pain in her joints but no

swelling was noticed. *Id.* at 333-334. He noted her symptoms of arthritis might indicate a

progression of her disease. On August 28, 2007 Dr. Tackey examined Ohlde and noted her lupus

was stable, and she complained of joint pain with no heat at the joints and fatigue. *Id.* at 342-

343. He continued her medications.

## II.    Step Two Determination

Ohlde argues that the ALJ improperly discounted her evaluation by NP Palmer regarding

the severity of her mental impairment. At step two, the Commissioner determines whether the

claimant has a medically severe impairment or combination of impairments that meets the twelve

month duration requirement. An impairment is severe if it significantly limits the claimant's

ability to perform basic work activities. 20 C.F.R. § 416.921. Ohlde bears the burden of proving

that her impairments are severe. *Mayes v. Massanari,* 276 F.3d 453, 459 (9ᵗʰ Cir 2001), 20 C.F.R.

§ 416.912. The opinion of counselors and nurse practitioners are not considered medical sources

---

family relations, judgment, thinking or mood. (e.g., depressed man avoids friends, neglects
family and is unable to work; child frequently beats up younger children, is defiant at home, and
is failing at school). The American Psychiatric Association, *Diagnostic and Statistical Manual
of Mental Disorders* (DSM-IV), 34 (4ᵗʰ ed. 2000).

who can provide evidence to establish an impairment. 20 C.F.R. § 416.913(a). They may be

used, however, to show the severity of an impairment. 20 C.F.R. § 416.913(d).

    The ALJ thoroughly discussed the opinion of NP Palmer. *Id.* at 17-18. He noted that

Ohlde had a past history of situational depression but that her more recent problems were with

anxiety, as noted by NP Palmer's diagnosis. *Id.* at 17. The ALJ further noted that although

anxiety was Ohlde's main problem, she was able to go out on weekends, enjoy bowling, enjoy

being with her fiancé, going to church, shopping, and lunching with friends. *Id.* The ALJ gave

little weight to the GAF score because it was inconsistent with the record and with the state

agency medical consultants who found Ohlde's mental impairments nonsevere. *Id.* at 18. He

further noted that NP Palmer's assessment of Ohlde's GAF was based in part on Ohlde's

unemployment and financial constraints. *Id.*

    The ALJ also noted that Dr. Rey reported Ohlde's improvement on Lexapro and that her

anxiety and depression were related to unemployment and family deaths. He also noted that in

2006 Dr. Rey found Ohlde's mood, affect, behavior, concentration, attention, and thought content

all within the normal range. *Id.* at 17. The ALJ further noted there were no significant

functional limitations assessed regarding Ohlde's mental impairments and Ohlde testified she

wanted to take college level courses from home. *Id.* at 18.

    The ALJ did not err at step two of the analysis but rather found Ohlde had a combination

of impairments that were severe and proceeded to step three. The issue is whether he properly

evaluated the functional limitations of her conditions for her RFC. The ALJ considered her

anxiety when determining her RFC and limited her to simple and repetitive unskilled tasks. *Id.* at

19.

### III.    Step Three Determination

Ohlde asserts she meets the Listing for SLE.  At step three of the decision-making process, the regulations apply a conclusive presumption that the claimant is disabled if the ALJ determines that the claimant's impairment is equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(d).  The criteria necessary to establish the presumptively disabling impairments are enumerated in the Listing of Impairments.

The ALJ specifically found that Ohlde's impairments did not meet or equal the criteria for Listing 14.00.  Ohlde asserts she meets Listing 14.00(B)(1) for SLE because of Dr.  Balme's exam in January 2003 in which he found her knee problem could be related to lupus.  The claimant has the burden of proving that her impairment satisfies or equals each criteria for a listed impairment based on medical evidence. *Sullivan v. Zebley,* 493 U.S. 521, 530-532 (1990), *Tackett v. Apfel,* 180 F.3d at 1100, 20 C.F.R. §§ 416.908, 416.925.

The criteria necessary to establish SLE are articulated in 20 C.F.R.  pt. 404, subpt. P, app. 1, 14.02.  The first criteria is that documentation is provided as described in 14.00(D). *Id.*  This section states that SLE is a chronic autoimmune disease that can affect any body system and is frequently accompanied by constitutional symptoms and signs (fever, severe fatigue, malaise and involuntary weight loss).  20 C.F.R.  pt. 404, supt. P, app. 1, 1400(D).  In addition, the medical evidence generally shows that the diagnosis of SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus of the American College of Rheumatology. . ." *Id.*

The second criteria is:

A. Involvement of two or more organs/body systems with
1. One system involved to at least a moderate level of severity and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss),
OR
Repeated manifestations of SLE, with at least two constitutional symptoms or signs (severe fatigue, fever, malaise or involuntary weight loss) and one of the following at a marked level:
1. Limitation of activities of daily living,
2. Limitation in maintaining social functioning,
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace.

20 C.F.R.   pt. 404, subpt. P, app. 1, 14.02(A) and (B).

The regulations for 14.02 in effect in March 2008, the date of the ALJ opinion, are somewhat different. The first criteria describes SLE as characterized by the same constitutional symptoms as above with multisystem involvement and generally meeting the criteria from the American College of Rheumatology. The second criteria refers to different body systems with specific criteria for each. Ohlde argues her knee problem in 2003 makes her meet this Listing. The criteria for joint involvement includes an inability to ambulate effectively without a hand held assistive device. In the alternative, there must be lesser involvement of two or more organs/body systems with significant, documented constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the body systems must be involved to at least a moderate level of severity. 20 C.F.R.   pt. 404, subpt. P, app. 1, 14.02(A) and (B), Revised April 1, 2007.

Ohlde does not offer any proof that she meets both criteria for SLE in either the current or older Listings. She simply argues that her knee problems and diagnosis are sufficient to meet the Listing. The ALJ correctly noted that acceptable medical sources did not find the marked impairments which are required to meet this Listing. Admin. R. 15, 20 C.F.R. § 416.913(a). An

assertion of "functional problems is not enough to establish disability at step three." *Tackett v. Apfel,* 180 F.3d at 1100. "Medical equivalence must be based on medical findings." *Id.,* 20 C.F.R. § 416.925.

The ALJ noted Ohlde had a diagnosis of discoid lupus with rashes occurring on her face, arms and hands with exposure to the sun, but no functional limitations were noted because of this condition. Admin. R. 16-17. Her most recent diagnosis of discoid lupus and examinations were made by Dr. Tackey, who is a rheumatologist. *Id.* at 270-271, 335-336. The ALJ also noted the inconsistent laboratory results and that her medical examinations were mostly normal. The ALJ further noted her swelling from the rash was controlled by medications and she was told to use sunscreen. There is nothing in the medical record to indicate Ohlde meets the criteria necessary to meet the Listing for SLE. The ALJ did not err at step three but correctly found that Ohlde's impairments did not meet a Listing.

## IV.   RFC

Ohlde does not specifically assert that the ALJ erred in determining her RFC. However, there is an implicit argument that the RFC should have included more limitations. The medical evidence has been discussed above. Although a younger individual, the ALJ limited Ohlde to a light level of work due to her symptoms. Ohlde argues the ALJ improperly discounted NP Palmer's evaluation of her GAF. However, as noted above, NP Palmer is not a medical source, but a lay witness. An ALJ can discount the testimony of a lay witness by providing germane reasons for doing so. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ noted NP Palmer's GAF score was inconsistent with the record and the medical opinions of the state agency medical consultants. Admin. R. 18. Inconsistency with the medical record is a germane reason to

discount lay testimony. *Bayliss v. Barnhart,* 427 F.3d. 1211, 1218 (9th Cir. 2005). The ALJ also noted that no functional limitations were assessed and that her daily activities were inconsistent with that level of disability. Admin. R. 18. He further noted NP Palmer's GAF was based in part on non-disability factors such as unemployment and other financial constraints. *Id.* The ALJ incorporated NP Palmer's diagnosis of generalized anxiety in determining Ohlde's RFC. The RFC limits Ohlde to light work which is unskilled and involves simple, repetitive tasks. The ALJ properly evaluated the medical and other evidence and reached conclusions based on substantial evidence in the record. The ALJ's determination of Ohlde's RFC is supported by substantial evidence in the record and free of legal error.

## IV.    Step Five

Ohlde asserts the ALJ erred at step five of the sequential process by failing to consider all of her limitations would result in an inability to do work. At the administrative hearing, the ALJ elicited the testimony of a vocational expert ("VE"). *Id.* at 402-408. Ohlde had no past relevant work so the ALJ proceeded to step five and asked the VE if there were other jobs in the national economy that a person of Ohlde's age, education and prior work history could perform. At step five, the Commissioner must show that significant numbers of jobs exist which the claimant can perform. *Andrews v. Shalala,* 53 F.3d at 1043. An ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant supported by the record. *Id.; Osenbrock v. Apfel,* 240 F.3d 1157, 1163-1164 (9th Cir. 2001).

Ohlde asserts the ALJ erred at step five because he did not consider the testimony from the VE that a person with her alleged limitations could not work. The ALJ gave the VE the RFC that included all of the limitations that he found. As noted above, the RFC is supported by substantial

evidence and free of legal error.  An ALJ is not required to incorporate limitations based on

evidence that he properly discounted. *Id.*

The ALJ considered all the evidence and framed his vocational hypothetical questions

based on the limitations supported by the record as a whole.  The VE testified that Ohlde could

perform a significant number of jobs that exist in the national economy.  The ALJ's conclusion

that Ohlde is able to perform some work and is not disabled is supported by substantial evidence

and free of legal error.

**CONCLUSION**

Based on the foregoing, the ALJ's decision that Ohlde does not suffer from a disability

within the meaning of the Social Security Act is based on correct legal standards and supported by

substantial evidence.  The Commissioner's final decision is AFFIRMED and the case is

DISMISSED.


DATED this ___*1st*___ day of November, 2010.


_____
Thomas M. Coffin
United States Magistrate Judge